RECEIVED

MAY 19 2008

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| SHANNON GIRARD, ET AL. | CIVIL ACTION NO.: 06-1884 |
| VERSUS | JUDGE DOHERTY |
| BRANDT ENERGY ENVIRONMENTAL, ET AL. | MAGISTRATE JUDGE HILL |

### MEMORANDUM RULING

Currently pending before this Court is a Motion for Summary Judgment, filed pursuant to FED. R. CIV. P. 56, on behalf of defendant Offshore Rental Corporation of Texas d/b/a Tiger Tanks ("Tiger Tanks"). [Rec. Doc. 42] Pursuant to the motion, defendant seeks a ruling "dismissing all of the plaintiffs' claims against it with prejudice and at plaintiff's cost." Due to the following, the Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

### Factual Background

Plaintiff, Shannon Girard, brings this lawsuit, alleging he was injured on March 16, 2006 while conducting a "box job" for his employer, Baker Hughes, on a jack-up rig "which was jacked up and situated at West Cameron Block 291, on the Outer Continental Shelf off the west coast of Louisiana." [Rec. Doc. 48, p.1; *see also* Rec. Docs.1, 11 and 61-1] Specifically, plaintiff alleges he and a co-worker were attempting to lift the lid of a cutting box when the hinges on the box "locked up," due to the hinges being "extremely rusted," bent, and in "dire condition." [Rec. Doc. 61, pp.

1

2,8] According to plaintiff, "when the hinges on the box locked up, it caus[ed] plaintiff's co-worker's hands to slip off the lid, allowing the entire weight of the cutting box to fall onto plaintiff," thereby causing injuries to plaintiff's back and right leg, which necessitated a lumbar decompression and fusion. [Rec. Doc. 61, p.2][1] Plaintiff asserts the cutting box which caused his injuries was owned by Brandt Energy Environmental, L.P. ("Brandt"), who leased the box to Tiger Tanks, and Tiger Tanks then leased the box to Baker Hughes. [Rec. Doc. 48, ¶ 3][2]

Plaintiff filed suit against Tiger Tanks and others[3] for vessel negligence (pursuant to 33 U.S.C. § 905 (b)), or alternatively, for unseaworthiness (under general maritime law), and for negligence pursuant to Louisiana Civil Code articles 2317 and 2317.1. Plaintiff's wife, Christie Girard, has filed a claim for loss of consortium. In the opposition memorandum, plaintiff concedes Tiger Tanks "cannot be liable pursuant to § 905(b) . . . [or] under the doctrine of unseaworthiness." [Rec. Doc. 61, p.4] Thus, the Court hereby **DISMISSES** those claims, and addresses only plaintiff's claim against Tiger Tanks for negligence pursuant to LA. CIV. CODE arts. 2317 and 2317.1, and the claim for loss of consortium.

### Summary Judgment Standard

"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary

---

[1] Plaintiff alleges prior to his accident: "[A] complaint had been made about the dangerous condition of the rusted hinges on these cutting boxes. Furthermore, prior to plaintiff's injury, another co-worker was injured performing the same task as plaintiff." [Rec. Doc. 61, p.2]

[2] Although defendant admits it leased cutting boxes (which were owned by Brandt) to Baker Hughes, defendant does not admit to leasing the exact cutting box which allegedly caused plaintiff's injury.

[3] All defendants except Tiger Tanks have been dismissed from this suit.

judgment in the party's favor as to all or any part thereof." FED. R. CIV. PROC. 56(b). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. PROC. 56(c).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

FED. R. CIV. PROC. 56(e).

As summarized by the Fifth Circuit in Lindsey v. Sears Roebuck and Co., 16 F.3d 616, 618 (5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Id. at 322; *see also*, Moody v. Jefferson Parish School Board, 2 F.3d 604, 606 (5th Cir.1993); Duplantis v. Shell Offshore, Inc., 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The Supreme Court has instructed:

The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Where no such showing is made, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

. . . .

> . . . In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment "shall be entered" against the nonmoving party unless affidavits or other evidence "set forth specific facts showing that there is a genuine issue for trial." The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.

Lujan v. National Wildlife Federation, 497 U.S. 871, 884, 888-89 (1990)(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

The Fifth Circuit has further elaborated:

> [The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)(citations and internal quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." Id. To the contrary, "in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached."

4

Roberts v. Cardinal Servs., 266 F.3d 368, 373 (5th Cir. 2001).

## Applicable Law

All parties agree federal jurisdiction in this matter is based on the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. § 1331 *et seq.* [Rec. Doc. 28]  This Court, having no evidence to the contrary, will therefore assume jurisdiction exists pursuant to OCSLA. "OCSLA adopts the law of the adjacent state (Louisiana) as surrogate federal law, to the extent that it is not inconsistent with other federal laws and regulations." Fruge v. Parker Drilling Co., 337 F.3d 558, 560 (5th Cir. 2003)); *see also* 43 U.S.C. § 1333(a)(2)(A).

Louisiana Civil Code article 2317 provides as follows:

> We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.

Louisiana Civil Code article 2317.1 [a modification to article 2317] states as follows:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

According to Louisiana jurisprudence, to prove a claim of negligence caused by the ruin, vice or defect of a thing, a plaintiff must show: (1) the property which caused the damage was in the "custody" of the defendant; (2) the property had a condition that created an unreasonable risk of

harm to persons on the premises [4]; (3) the unreasonably dangerous condition was a cause-in-fact of the resulting injury; and (4) defendant had actual or constructive knowledge of the risk.[5] *See e.g.* Fontenot v. Fontenot, 635 So.2d 219 (La. 1994); Vinccinelli v. Musso, 818 So.2d 163, 165 (La.App. 1st Cir.2002).

As noted in Dupree v. City of New Orleans:

> It is well-settled law in Louisiana that liability under LA. CIV. CODE art. 2317 is based upon the relationship, i.e., supervision and control, between the person with custody and the thing posing an unreasonable risk of harm to others. Liability is imposed based on custody or garde, not just ownership. The fault of the custodian is based upon his failure to prevent the thing under his garde from causing an unreasonable risk of injury to others. Rather than the loss falling upon some innocent third person, the loss resulting from the creation of the risk falls upon the person to whom society allots its garde. The rationale is the custodian is in a better position than the innocent victim to detect, evaluate, and take steps to eliminate an unreasonable risk of harm which arises from the thing.

---

[4] As noted in Hutchinson v. Knights of Columbus, Council No. 5747, 866 So.2d 228, 235 (La. 2004):

> [W]hether a condition of a thing is unreasonably dangerous requires consideration of: (1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, which includes the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of its social utility or whether it is dangerous by nature.

[5] Although both parties state several times in their briefs that the civil code articles referenced above provide for "strict liability" [Rec. Docs. 42-2, p. 4, and 61, p.9], at all times pertinent to this litigation, Louisiana law has imposed a negligence standard of care upon those who own or have *garde* over physical objects in this State. While Louisiana did impose, prior to 1996, strict liability upon owners whose "things" caused harm to others, the Louisiana Supreme Court has repeatedly acknowledged that strict liability is no longer imposed upon owners or guardians of things in this State. "By requiring knowledge or constructive knowledge...the legislature effectively eliminated strict liability under Article 2317, turning it into a negligence claim." Laysone v. Kansas City Southern Railroad, 786 So.2d 682, 689 n.9 (La. 4/3/01). As the law now requires that a property owner knew or should have known of the ruin, vice or defect, the mere showing that a defect existed which caused injury will be insufficient to carry the burden of proof. *See e.g.*, Weber v. Alton Ocshner Med. Found. Hosp., 759 So.2d 146, 149 (La. App. 5th Cir. 2000). (Prior to the abolition of strict liability, plaintiff's *prima facie* burden consisted only of elements 1 - 3, above. The fourth element (knowledge) was added after the standard changed from strict liability to negligence, and thus the *prima facie* burden shifted from liability without fault, to liability premised upon fault.)

> Determining who has the custody or garde of the thing is a fact driven determination. Moreover, because Article 2317 imposes liability upon persons for things in their custody or garde, a principle much broader than ownership, it is clear that more than one party may have custody or garde of a thing under La. Civ.Code art. 2317, determined by an examination of the parties' actions and relationships to the thing causing the injury. The person who has custody or garde of a thing is he who has the legal duty to prevent its vice or defect from harming another.
>
> In attempting to define a test for determining who has custody or garde of a thing, we have set forth several general principles to assist the trier-of-fact. Most notably we have stated that in determining whether a thing is in one's custody or garde, courts should consider (1) whether the person bears such a relationship as to have the right of direction and control over the thing; and (2) what, if any, kind of benefit the person derives from the thing.

Dupree, 765 So.2d 1002, 1008-09 (La. 2000)(citations omitted).

## Analysis

Defendant makes the following arguments: (1) plaintiff "cannot prove that Tiger Tanks was the owner or custodian of the thing that allegedly caused him damage" [Rec. Doc. 42-2, p.5]; (2) plaintiff cannot prove Tiger Tanks had "control or direction over the cutting boxes. . ., a necessary predicate for 'custody' under Louisiana Civil Code articles 2317 and 2317.1" [Id. at 5]; (3) "[a]ssuming, arguendo, the plaintiff is able to prove that the box that injured him was leased through Tiger Tanks, the evidence shows that Tiger Tanks transferred custody of the cutting boxes to Baker Hughes" [Id. at 5-6]; and (4) "[b]ecause Shannon Girard has no claim against Tiger Tanks, Christie Girard's derivative claim against Tiger Tanks for loss of consortium should be dismissed." [Id. at 6]

As to defendant's first argument (plaintiff cannot prove Tiger Tanks was the owner or custodian of the cutting box which caused plaintiff's injury), the Court first notes, "[d]etermining who has the custody or garde of the thing is a fact driven determination." Dupree at 1009; *see also* Doughty v. Insured Lloyds Ins. Co., 576 So.2d 461, 464 (La. 1991)("Whether the law imposes a

duty of garde upon . . . [a party] is a factual inquiry."); *and* Royer v. Citgo Petroleum Corp., 53 F.3d 116, 119 (5th Cir. 1995)("[W]hether a party has custody of an object is generally an issue for the jury.") Furthermore, defendant admits it leased 78 cutting boxes (owned by Brandt) to Baker Hughes in March 2006. [Rec. Docs. 48, 42-4 and 61-4] No party has advised the Court whether or not Baker Hughes (at the time of plaintiff's accident) exclusively leased Tiger Tanks' cutting boxes, or also leased cutting boxes from other entities. At plaintiff's deposition, the following colloquy occurred:

> Q: Did all of the boxes that you used, that your crew used on this job up to the point that you got hurt say Brandt on them?
>
> A: I'm pretty sure.

[Depo. of S. Girard, p. 71] Due to the foregoing, the Court finds defendant has failed to carry its burden and point to "an absence of evidence" in the record supporting plaintiff's assertion Tiger Tanks was the custodian of the box which caused plaintiff's injury; rather, that inquiry is a question of material fact which must be decided by the jury - not by the Court by way of summary judgment.[6]

---

[6] Although the Court need not address defendant's remaining arguments (due to its finding above that defendant has failed to carry its burden of proof), it nevertheless notes it would likely deny summary judgment on the basis of defendant's remaining arguments as well. As to defendant's argument plaintiff cannot prove Tiger Tanks had control over the cutting boxes, whether or not defendant had "the right of direction and control over the thing," is also a question of fact which must be decided by the jury. In the affidavit submitted by Mr. Monceaux, he states:

> In March 2006, . . . Tiger Tanks was responsible for the maintenance and repair of cutting boxes owned by Brandt and rented or leased by . . . Tiger Tanks to its customers. Ex. "B" which is attached to this Affidavit is a true and correct copy of invoices from . . . Tiger Tanks to Brandt . . . reflecting maintenance and transportation charges associated with cutting boxes which were maintained and repaired by Tiger Tanks.

[Id. at 3] The attached documents contain several invoices from March 2006 for the rental of cutting boxes from Tiger Tanks by Baker Hughes for use on the Rowan Juneau (the jack-up rig upon which plaintiff was working at the time of the accident), as well as several invoices during that same month from Tiger Tanks to Brandt for maintenance and transportation charges of cutting boxes. In Dixon v. Sutcliffe

The Court finds plaintiff has presented sufficient evidence demonstrating there are issues of material fact which preclude summary judgment on the underlying claim. Both plaintiff and defendant addressed the loss of consortium claim within its context as a derivative claim. As the underlying claim has survived summary judgment, defendant's motion, to the extent it seeks a dismissal of the loss of consortium claim, is denied.

## Conclusion

Due to the foregoing, defendant's motion for summary judgment [Rec. Doc. 42] is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted to the extent it dismisses plaintiff's claim for vessel negligence, brought pursuant to 33 U.S.C. § 905(b), and plaintiff's claim for unseaworthiness, brought under general maritime law. The motion is denied as to plaintiff's

---

Inc., 194 F.3d 1308 (5th Cir. 1999), plaintiff was injured while working on a land-based drilling rig. Plaintiff's employer had leased the rig from the lessor on August 29, 1995. Physical possession of the rig was not transferred to plaintiff's employer until mid-September 1995. The rig went into operation in early October 1995, and plaintiff's accident occurred on October 12, 1995. The Court stated where the lessor had:
> the substantial power of usage, direction, and control [of the rig], including the practical ability to discover defects . . . the transfer of the rig to [lessee] did not divest [lessor] of garde of the rig because there is no dispute that, at the end of the project, [lessee] returned the leased rig to the [lessor].

The same is true here: Tiger Tanks had the ability to lease the cutting boxes to its customers, it conducted repairs on the cutting boxes, it admits it "was responsible for making certain that any cutting boxes leased to its customers such as Baker Hughes in March 2006 were reasonably safe for use offshore prior to delivery to Tiger Tanks' customer" [Response to Request for Admission, Rec. Doc. 61, Ex. C], invoices reflect Tiger Tanks leased boxes to Baker Hughes on February 28, 2006, March 3, 2006, March 5, 2006, and March 6, 2006, and plaintiff's injury occurred on March 16, 2006. Under these circumstances, the Court finds defendant has failed to carry its burden and show there is an absence of evidence which would show defendant did not have control or direction over the cutting boxes.

As to defendant's third argument (it transferred custody to Baker Hughes), as previously noted, "it is clear that more than one party may have custody or garde of a thing. . . ." Dupree at 1009. Whether custody was transferred to Baker Hughes, or custody was shared between Tiger Tanks and Baker Hughes, is an issue for trial and not summary judgment.

claims brought pursuant to LA. CIV. CODE arts. 2317 and 2317.1. The motion is also denied as to the claim for loss of consortium.

THUS DONE AND SIGNED in Lafayette, Louisiana, this 14 day of May, 2008.

_____
REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE